Michael E. Langton, Esq.
Nevada Bar No.: 0290
801 Riverside Drive
Reno, Nevada 89503
(775) 329-7557
mlangton@sbcglobal.net

Attorney For Applicant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 169, | CASE:3:20-cv-000356-MMD-CLB |
| Applicant, | |
| vs. | |
| THE PENTA BUILDING GROUP, INC., | |
| Respondent. | |

## STIPULATION AND ORDER TO LIFT STAY OF PROCEEDINGS AND CONFIRM ARBITRATION AWARDS

**COMES NOW**, Laborers' International Union of North America, Local 169, by and through its attorney, Michael E. Langton, Esq., and The Penta Building Group, Inc., by and through its attorney, Matthew T. Cecil, Esq., and pursuant to Local Rule LR 7-1, stipulate an Order shall be entered lifting the Stay of Proceedings in this case which was entered by prior Stipulation on October 13, 2020.

As ordered by the Court in the October 13, 2020 Stipulation the parties were to notify the Court when the Ninth Circuit Court of Appeals issued its decision in Case No. 20-15318. As evidenced by the "Memorandum" attached hereto as Exhibit 1, on March 19, 2021 the Appellate Court affirmed the

District Court's decision in Case No. 3:19-cv-0401-MMD-CBC.

The parties agree the Appellate Court's Memorandum renders the issues presented in this moot because the issues upon which the Motion To Confirm Arbitration Awards are identical to the issues litigated in Case No. 3:19-cv-0401-MMD-CBC.

Accordingly, the parties hereby Stipulate the Stay of Proceedings issued on October 13, 2020 shall be lifted and the Court shall issue and Order Confirming Arbitration Awards upon which the case shall be closed.

**DATED**: June 15, 2021                **DATED**: June 15, 2021

*Michael E. Langton*

MICHAEL E. LANGTON, ESQ.
Nevada Bar No.: 0290
801 Riverside Drive
Reno, Nevada 89503
(775) 329-7557
mlangton@sbcglobal.net

Attorney For Applicant

/c/ Matthew T. Cecil

MATTHEW T. CECIL, ESQ.
Nevada Bar No.: 9525
Holland & Hart
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
(702) 669-4600
mtcecil@hollandhart.com

Attorney For Respondent

**IT IS SO ORDERED.**

Dated this  28th  day of June, 2021.

_____
U.S. DISTRICT COURT JUDGE

**EXHIBIT INDEX**

<u>Exhibit</u>

1    Memorandum in Case No. 20-15318 in the case of Laborers' International Union of North America, Local 169, Petitioner-Counter-Respondent-Appellee vs. The Penta Building Group, Inc., Respondent-Counter-Claimant-Appellant, filed March 19, 2021 with the United States Court of Appeals for the Ninth Circuit

-oOo-

# Exhibit 1

# Exhibit 1

**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAR 19 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 169, <br><br> Petitioner-counter-respondent-Appellee, <br><br> v. <br><br> THE PENTA BUILDING GROUP, INC., <br><br> Respondent-counter-claimant-Appellant. | No. 20-15318 <br><br> D.C. No. 3:19-cv-00401-MMD-CLB <br><br><br> MEMORANDUM* |

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, Chief District Judge, Presiding

Argued and Submitted February 11, 2021
San Francisco, California

Before: WARDLAW and BEA, Circuit Judges, and CAIN,** District Judge.

The Penta Building Group, Inc. ("Penta") appeals from the district court's judgment affirming an arbitration award in favor of Laborers' International Union

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The Honorable James David Cain, Jr., United States District Judge for the Western District of Louisiana, sitting by designation.

of North America, Local 169 ("the union"). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

At issue here is the Laborers Master Agreement ("LMA"), a collective bargaining agreement formed under § 9(a) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159. This agreement arose in 2015 between an association of construction employers, including Penta, and the union, which represents various types of construction workers in Northern Nevada. In May 2018, near the end of the LMA's term, Penta sent timely written notice of its intent to terminate the agreement. The union responded that Penta's notice was invalid under the LMA's terms because it had not offered to meet and confer with the union and that Penta was therefore bound to any successor LMA that arose from its negotiations with the rest of the association. Penta defended its notice under the LMA but also notified the union that it was withdrawing recognition because it no longer had any projects in the union's jurisdiction or employed any bargaining unit employees.

The parties submitted their disagreement over the notice's validity to arbitration in accordance with the LMA, though Penta maintained that the issue was moot because it had withdrawn recognition of the union. The arbitrator disagreed that the issue was moot, finding that the notice was defective under the LMA and therefore invalidated Penta's attempted withdrawal of recognition. Accordingly, the arbitrator determined that Penta was bound to the successor LMA

2

negotiated between other association members and the union. The union moved to affirm the award in the district court, where Penta also moved for vacatur. The district court affirmed the award, rejecting Penta's arguments that its right unilaterally to withdraw recognition of the union under NLRB precedent trumped the termination requirements under the LMA. Penta now appeals that ruling.

1. We review the district court's denial of a motion to vacate an arbitration award de novo. *Aramark Facility Svcs. v. Serv. Employee Int'l Union, Local 1877, AFL CIO*, 530 F.3d 817, 822 (9th Cir. 2008). The scope of our review of an arbitrator's decision in a labor dispute is narrow and the decision is usually upheld as long as it represents a "plausible interpretation of the contract." *Id.* at 822–23 (internal citation omitted). Exceptions to this general deference occur, however, where (1) the "award does not draw its essence from the collective bargaining agreement and the arbitrator is dispensing his own brand of industrial justice," (2) "the arbitrator exceeds the boundaries of the issues submitted to him," or (3) "the award is contrary to public policy." *United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms*, 74 F.3d 169, 173 (9th Cir. 1995) (internal quotation marks and citations omitted).

The arbitrator had jurisdiction to decide the dispute even after Penta had attempted to withdraw from the LMA and even though Penta no longer employed any covered employees. The LMA confirmed Penta's recognition of the union

3

under § 9(a) of the NLRA and set forth the terms under which such recognition could be withdrawn. Following such recognition the union is entitled to a conclusive presumption of majority status for the entire term of the CBA, which can last up to three years. *Auciello Iron Works, Inc. v. NLRB*, 517 U.S. 781, 786 (1996) (internal citation omitted); *see also Johnson Controls, Inc.*, 368 NLRB No. 20, at *4 (2019). Penta argues that under the "single employee rule," a longstanding NLRB precedent which provides that a bargaining unit must contain at least two members, it was nonetheless entitled to withdraw recognition upon belief that these circumstances existed. The cases on which it relies, however, support an exception to the union's presumption of majority status only under unique circumstances not present here, such as a corporate reorganization, or have emphasized that the rule applies only where the union lacks adequate representation "at all material times." *See Foreign Car Ctr., Inc.*, 129 NLRB 319, 320 (1960); *Kirkpatrick Electric Co., Inc.*, 314 NLRB 1047, 1053 (1994),

Here, on the other hand, the LMA prevents the employer from unilaterally withdrawing recognition or otherwise attempting to terminate the LMA in the middle of its term. Section 1, "Recognition," provides that the employer will recognize the union as exclusive collective bargaining agent for employees within its jurisdiction "unless and until such time as the Union loses its status as the employees' exclusive representative as a result of an NLRB election requested by

the employees." The same section provides that the employer will not request such an election and "expressly waives any right to do so." Meanwhile, Section 39 is titled "Effective and Termination Date" and provides:

> Except as set forth above, the Employer and each individual Employer bound to this agreement waives any right to terminate, abrogate, repudiate, or cancel this agreement during its term or during the terms of any future modifications, changes, amendments, supplements, [or] extensions, or to file or process any petition before the National Labor Relations Board seeking such termination, abrogation, repudiation or cancellation.

Under these terms there was no basis for Penta to repudiate the LMA in the middle of its term—even under a good faith belief that the union no longer had adequate representation—and nothing in NLRB precedent supporting its attempt to do so in violation of the LMA. Additionally, we find no injustice in holding Penta to the LMA's terms even if it did not have any bargaining unit employees through the entire term of the LMA. The agreement gives the union bargaining representative status of employees on present and future projects only within the union's jurisdiction, meaning that the union would have no bargaining power to use against Penta while Penta had no bargaining unit employees. *See id.* **at 120.** Accordingly, Penta's withdrawal of recognition did not void the LMA or deprive the arbitrator of jurisdiction thereunder.

2. The arbitrator did not exceed his jurisdiction by determining that Penta was bound to the successor LMA. Representational issues, including identification

5

of a bargaining unit under § 9 of the NLRA, fall within the NLRB's primary jurisdiction. *Pace v. Honolulu Disposal Serv., Inc.*, 227 F.3d 1150, 1156–57 (9th Cir. 2000). Arbitrators and federal courts alike must tread lightly around resolving these issues, even when they are raised within the guise of contract interpretation. *Id.*; *see also Ziegler, Inc.*, 333 NLRB 949, 949–50 (2001). We "[draw] the jurisdictional line by asking 'whether the major issues to be decided . . . can be characterized as primarily representational or primarily contractual.'" *Pace*, 227 F.3d at 1157 (quoting *United Ass'n of Journeymen, etc. v. Valley Engineers*, 975 F.2d 611, 614 (9th Cir. 1992)).

Here the grievance dealt with the terms of the LMA, but the arbitrator's decision had significant representational implications. While recognizing the NLRB's primary jurisdiction over representational matters, we have also held that the parties may resolve such issues contractually. *Hotel Emps., Restaurant Emps. Union, Local 2 v. Marriott Corp.*, 961 F.2d 1464, 1468 (9th Cir. 1992); *see also Int'l Union of Painter & Allied Trades, Dist. 15, Local 159 v. J & R Flooring, Inc.*, 656 F.3d 860, 869 (9th Cir. 2011). Here, the LMA set forth specific terms on notice, termination, and the consequences of deficient notice. That the arbitrator referenced these sections and used the LMA's terms to address Penta's contention that the withdrawal of recognition negated any consequences for the deficient notice does not show that he exceeded his jurisdiction. Instead, Penta's

disagreements about the proper interpretation of these terms and their impact on its ability to withdraw recognition remain a contractual issue within the scope of the arbitrator's jurisdiction.

3. The arbitrator did not exceed his authority under either the grievance or the terms of the LMA by deciding a representational issue. One basis for vacating an arbitrator's award occurs when he exceeds the boundaries of the issue submitted to him. *Foster Poultry Farms*, 74 F.3d at 173. However, there is a general presumption in favor of arbitrability whenever a contract contains an arbitration clause. *Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council*, 940 F.2d 513, 517 (9th Cir. 1991). Once a matter is submitted to arbitration, it is presumed that the arbitrator should decide "procedural questions which grow out of the dispute and bear on its final disposition" as well as "allegations of waiver, delay, or a like defense to arbitrability." *Sw. Reg. Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 531 (9th Cir. 2016) (cleaned up). Courts should assume that the parties have agreed to arbitrate the issue of arbitrability only in the face of clear and unmistakable evidence. *PowerAgent Inc. v. Electronic Data Sys. Corp.*, 358 F.3d 1187, 1191 (9th Cir. 2004). When this is the case, the court gives the arbitrator's conclusions the same deference accorded to other aspects of his decision. *Id.*

The LMA authorized the arbitrator to decide disputes "over interpretations and operations of this Agreement." The union filed its grievance "over the failure of Penta to comply with the terms of the LMA[, i]ncluding but not limited to Section 39." It specifically noted its "unequivocal position that Penta's notice was deficient and not in compliance with the terms of the [LMA]." Penta agreed to this scope but maintained that any procedural defects were moot because it no longer employed anyone in the bargaining unit. It also expressly reserved defenses, including lack of jurisdiction, and argued to the arbitrator that he lacked authority to determine the validity of the withdrawal of recognition.

The arbitrator defined the issue as: "Was Penta's notice deficient and not in compliance with the terms of the [LMA]? If not, what shall be the appropriate remedy?" Within this scope he was required to—and did—address Penta's arguments regarding the withdrawal of recognition and its effect on notice requirements by referencing the terms of the LMA. To the extent there was a question of arbitrability before the arbitrator, Penta fails to call the arbitrator's interpretation of LMA terms and resolution of the issue into question. Accordingly, this argument likewise shows no basis for vacatur.

4. The arbitrator's decision does not violate public policy. Finally, Penta argues that the arbitrator's decision should be set aside because it violates public policy by mandating collective bargaining with an improper union. Another

8

exception to the usual deference afforded to an arbitrator's award occurs where the award "actually violates . . . any explicit, well defined and dominant public policy." *George Day Constr. Co., Inc. v. United Bhd. of Carpenters & Joiners of Am., Local 354*, 722 F.2d 1471, 1477 (9th Cir. 1984). This exception is narrow. *E. Assoc. Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 63 (2000). The policy at issue must specifically militate against the relief ordered by the arbitrator, and its existence must be drawn from "laws and legal precedents [rather than] general considerations of supposed public interests." *Id.* at 62. The party seeking to vacate the award bears the burden of showing that it is contrary to public policy. *Foster Poultry Farms*, 74 F.3d at 174.

Here Penta points to an "explicit, well-defined and dominant public policy against collective bargaining with unions representing an inappropriate bargaining unit," in reliance on Sections 7, 8(a)(1), and 8(a)(2) of the NLRA. Section 7 speaks to the employees' right to self-determination. 29 U.S.C. § 157. Meanwhile, Sections 8(a)(1) and 8(a)(2) make it an unfair labor practice for the employer (1) "to interfere with, restrain, or coerce employees" in their exercise of rights under Section 7 or (2) "to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it." 29 U.S.C. § 158(a)(1)–(2). Accordingly, we have held that it is an unfair labor practice for an employer to recognize a union that lacks majority support. *See, e.g., Cascade Gen.*

9

*v. NLRB*, 9 F.3d 731, 734 (9th Cir. 1993). Penta therefore maintains that the arbitrator's award—binding Penta to a successor LMA with the union, though Penta employs no workers within the union's jurisdiction—violates this policy because it deprives any future workers hired within this jurisdiction of the right to select a rival union or no union at all.

Here, however, Section 1 of the LMA expressly preserves the employees' right to call an NLRB election in order to determine the union's status. As long as the successor LMA also contains this provision, then any future Penta workers within the union's jurisdiction also retain their right to self-determination. Accordingly, this matter does not fall within the narrow public policy exception of deference to arbitration awards.

**AFFIRMED.**